O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA TOLIS DE TELLEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:17-cv-02918-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Eva Tolis de Tellez ("Plaintiff") appeals the final decision of the Social Security Commissioner denying her application for disability insurance benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff filed her DIB application on January 9, 2013, alleging a disability onset date of May 18, 2011. Administrative Record ("AR") 137-40, 151. An Administrative Law Judge ("ALJ") conducted a hearing on November 23, 2015, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 39-62. The ALJ issued an unfavorable decision on January 11, 2016. AR 12-38.

1

The ALJ found that Plaintiff suffers from the severe impairments of status post L5-S1 discectomy with residual myofascial pain, and status post right shoulder repair with chronic impingement. AR 17. The ALJ also found that Plaintiff did not have a severe mental impairment, and she did not incorporate any mental limitations in Plaintiff's residual functional capacity ("RFC") assessment. AR 19.

Despite Plaintiff's impairments, the ALJ found that she retained the RFC to "lift and carry 10 pounds frequently, 20 pounds occasionally, [and] stand and walk at least four hours in an eight-hour day" with the following additional limitations: "cannot climb ladders, can occasionally climb stairs, balance, stoop, crouch, and crawl, can occasionally reach overhead bilaterally, can occasionally perform gross handling with right upper extremity, no limitations in fine fingering, cannot have concentrated exposure to vibrating tools, cannot work at unprotected heights or operation of hazardous moving machinery." AR 23.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work of cosmetologist, Dictionary of Occupational Titles ("DOT") 332.271-010 or store manager, DOT 185.167-046. AR 30. The ALJ found that Plaintiff had transferable skills from her work as a salon manager of "supervisory, retail trade, merchandising, and sales skills, such as communication, customer service, and information giving." AR 31. With those transferable skills, the ALJ ruled at step five that Plaintiff could perform the semi-skilled occupations of companion, DOT 309.677-010, and case aide, DOT 195.367-010. AR 31. The ALJ found alternatively that if Plaintiff were limited to sedentary work instead of light, she could perform the semi-skilled occupation of information clerk, DOT 237.357-022. AR 32. The ALJ therefore concluded that Plaintiff was not disabled. Id.

# II.

# PROCEDURES AND STANDARDS

## A. The Evaluation of Disability.

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

## B. The Five-Step Evaluation Process.

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform his past work; if so, the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**C.     Standard of Review.**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715,

720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.
## ISSUES PRESENTED

All the issues Plaintiff raises on appeal concern her mental limitations rather than her exertional limitations, as follows:

Issue No. 1: Whether the ALJ committed reversible error assessing opinions of examining psychiatrist Peter Dell, M.D.

Issue No. 2: Whether the ALJ committed reversible error in assessing opinions of consultative examining psychologist Isadore Wendel, Ph.D.

Issue No. 3: Whether the ALJ's committed reversible error in assessing the opinions of state agency reviewing psychologist Patrice Solomon, Ph.D.

Issue No. 4: Whether "the ALJ's ruling that Plaintiff did not have mental limitations is supported by substantial evidence."

Issue No. 5: Whether the ALJ's adverse credibility determination is supported by substantial evidence. (Dkt. 16, Joint Stipulation ("JS") at 3.)

# IV.
# DISCUSSION

**A.** **<u>Issue One: The ALJ's Assessment of Dr. Dell's Opinions.</u>**

    **1. Rules for Weighing Conflicting Medical Evidence and Determining the Claimant's RFC.**

There are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, such as Dr. Belen, and (3) those who did not treat or examine the plaintiff. <u>See</u> 20 C.F.R. § 416.927(c); <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. <u>Lester</u>, 81 F.3d at 830. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (citing <u>Reddick</u>, 157 F.3d at 725); <u>Lester</u>, 81 F.3d at 830-31 (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)).

A claimant's RFC is the most that claimant can still do despite his or her limitations, and is based on all the relevant evidence in the case record. 20 C.F.R. § 416.945(a); Social Security Ruling ("SSR") 96-8. In making the RFC determination, the ALJ takes into account those limitations for which there is support in the record. <u>Batson v. Comm'r</u>, 359 F.3d 1190, 1197-98 (9th Cir. 2003).

"The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." <u>Ly v. Colvin</u>, No. 13-1241, 2014 U.S. Dist. LEXIS 135826, at *33 (E.D. Cal. Sep. 24, 2014). The RFC need not parrot the opinion of any particular doctor, but rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." <u>Rounds v. Comm'r of SSA</u>, 807 F.3d 996, 1006 (9th Cir. 2015); <u>see also</u> <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d

1169, 1174 (9th Cir. 2008) (discussing the ALJ's role in weighing conflicting medical evidence and "translating" accepted medical opinions into "concrete restrictions"). Where, for example, a credited medical source opines that the claimant has "mild" or "moderate" difficulties with social interactions, the ALJ must decide whether the RFC should specify that the claimant can perform jobs requiring no, occasional, or frequent contact with members of the public and/or co-workers. Where a credited medical source opines that the claimant has "mild" or "moderate" difficulties maintaining concentration or pace, the ALJ must decide whether the RFC should specify that the claimant can perform work if the reasoning level and/or skill level of the work is low (i.e., "simple" work), if the work environment is "routine" (as opposed to high-stress or fast-paced), if the claimant is permitted to take breaks of specified frequency and duration, etc. Stubbs-Danielson, 539 F.3d at 1174 (holding an RFC of "simple, routine, repetitive sedentary work" adequately captures "moderate" deficiencies in pace).

The ALJ's translation of the medical evidence into concrete functional assessments should be affirmed if the ALJ "applied the proper legal standard and his decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing Morgan v. Comm'r of the SSA, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")).

**2. Summary of Dr. Dell's Opinions.**

Plaintiff worked as a cosmetologist and manager at a Fantastic Sam's hair salon for many years. AR 264. In 2010, she slipped on a wet floor, injuring her back and right shoulder. AR 622, 720. She filed a workers' compensation claim, and she underwent back surgery in 2012 and shoulder surgery in 2013. AR 720.

In October 2013, Plaintiff amended her workers' compensation claim to include a claim for depression and anxiety arising out of chronic pain. AR 697. Dr. Dell, a Panel Qualified Medical Evaluator for the California workers' compensation

7

system, evaluated Plaintiff twice.

Dr. Dell first evaluated Plaintiff on May 6, 2014, and he prepared a lengthy report. AR 616-735. He reviewed her medical history (noting no mental health treatment), discussed sources of stress in her life, administered psychological tests, and ultimately diagnosed Plaintiff as suffering from "an adjustment disorder with depressed mood." AR 725. He explained that he did not diagnose Plaintiff as having "major depressive disorder," because "she was slightly exaggerating her symptoms" during the evaluation. AR 726. As for psychiatric symptoms, he recorded that she reported changes in her sleeping and eating habits (such as taking two hours to fall asleep, decreased appetite, and a six-pound weight fluctuation), decreased libido, crying spells, and feelings of worthlessness. AR 721, 726. He gave her a Global Assessment of Functioning ("GAF") score of 62 because that score "corresponds to mild symptoms and 'some' impairment of functioning." AR 726. He found that her mental condition did not cause any "moderate" functional limitations, because she was "active in several areas of her life, such as attending classes at an adult school and performing household duties …." AR 726-27.

Dr. Dell concluded that Plaintiff's depressed mood arose out of her physical injuries, and was thus predominantly an industrial injury. AR 728. Regarding her "periods of disability," Dr. Dell opined as follows:

> The applicant appears to have been temporarily partially disabled on a psychiatric basis from May 18, 2011, when she went off of work, until the present. The applicant has at no time been totally disabled on a psychiatric basis. Work restrictions for the applicant include that she be allowed to take a 20-minute break whenever she experiences increased symptoms of depression or anxiety.

AR 729.

Dr. Dell evaluated Plaintiff a second time and issued a final report on February 2, 2015. AR 751-90. He noted that Plaintiff had still not received any

therapy, counselling, or psychiatric medication since his 2014 evaluation. AR 761. He completed a lengthy assessment of Plaintiff's functional abilities, all of which he rated as either unimpaired or mildly impaired (i.e., a "1" or "2" on a 5-point scale). Dr. Dell observed that Plaintiff did not exaggerate her symptoms as much during the second evaluation, but he did not change his diagnosis, GAF score, or other findings, including his work restriction. AR 776-78.

### 3. Plaintiff's Claim of Error Regarding the ALJ's Assessment of Dr. Dell's Opinions and Consequent RFC Determination.

The ALJ discussed both of Dr. Dell's reports and gave his opinions "great weight." AR 18-19. The ALJ did not, however, mention the work restriction imposed by Dr. Dell or incorporate into the RFC a requirement that Plaintiff be allowed to take a 20-minute break per a set schedule or whenever she experienced increased symptoms of depression or anxiety. AR 23.

At the hearing, Plaintiff's counsel asked the VE whether it would preclude employment if a hypothetical worker with Plaintiff's RFC were permitted "to take 20-minute breaks at her discretion throughout that day." AR 61. The VE responded that the question was "not really quantified enough" to answer, because it did not specify how many breaks the hypothetical worker would take. The VE, however, provided a quantified example, testifying that if the hypothetical worker took three 20-minute breaks each 8-hour workday, then that would preclude employment. Id. Counsel did not follow up by eliciting VE testimony concerning the effect on employment opportunities of any other break schedule. Id.

On appeal, Plaintiff contends that the ALJ was required either to explain why she rejected Dr. Dell's work restriction regarding 20-minute breaks or incorporate it into the RFC. (JS at 5.) Plaintiff argues that the ALJ's failure to do so affected her decision of non-disability because (1) Dr. Dell's opinion permits "20-minute discretionary work breaks," and (2) the VE testified that if Plaintiff were permitted to take the "breaks identified by Dr. Dell," then there would be no jobs available.

9

(Id.)

### 4. The ALJ Explained Her Assessment of Dr. Dell's Opinions, and Substantial Evidence Supports Omitting a Work-Preclusive Break Requirement from Plaintiff's RFC.

Plaintiff reads Dr. Dell's work restriction too broadly. Dr. Dell did not opine that Plaintiff could only work if permitted to take as many 20-minute breaks as she might want. Rather, he imposed as a work restriction that she be allowed to take a 20-minute break "whenever she experiences increased symptoms of depression or anxiety." AR 729, 778. Dr. Dell did not indicate how often he expected Plaintiff to experience "increased symptoms of depression or anxiety" while working, but he rated her ability to complete a normal workday without interruptions from psychologically-based symptoms as only "mildly" impaired. AR 772. Whatever number of breaks Dr. Dell had in mind, it was clearly not a work-preclusive number (such as three breaks every day), because Dr. Dell opined that Plaintiff is not disabled from working "on a psychiatric basis." AR 778. Workers who, due to psychiatric symptoms, can only work if allowed to take 20-minute breaks whenever they choose, would be unemployable – a common-sense fact that would have been apparent to Dr. Dell. Rather than interpreting Dr. Dell's reports as having imposed a work-preclusive work restriction, it is far more reasonable to interpret his work restriction as consistent with the other parts of his lengthy reports – all of which conclude that Plaintiff's psychiatric symptoms, at worst, mildly limit her ability to perform some work-related tasks. See 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your [mental] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

While ALJs are required to give specific, legitimate reasons for rejecting relevant medical opinions, they are not required to explain how they translated each

relevant medical opinion into an RFC determination. See Estep v. Colvin, No. 15-2647, 2016 U.S. Dist. LEXIS 163699, at *27 (E.D. Cal. Nov. 28, 2016) ("[A]s the Ninth Circuit Court of Appeals has observed, an ALJ may synthesize and translate assessed limitations into an RFC assessment … without repeating each functional limitation verbatim in the RFC assessment or hypothetical." (citing Stubbs-Danielson, 539 F.3d at 1173-74)). Here, where Dr. Dell did not quantify how often he expected Plaintiff would experience increased symptoms requiring a 20-minute break, the ALJ did not err in failing to incorporate verbatim this ill-defined work restriction into the RFC. Dr. Dell found only mild mental impairments, which "do not have to be exactly mirrored in the RFC determination." Phillips v. Colvin, 61 F. Supp. 3d 925, 939-40 (N.D. Cal. 2014); Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) ("We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation.").

Regarding the requirement that the ALJ explain her reasons for accepting or rejecting medical evidence, ALJ thoroughly explained why she did not incorporate into the RFC Plaintiff's work-preclusive interpretation of Dr. Dell's work restriction. The ALJ explained that the medical evidence (including Dr. Dell's own evaluations) does not show that Plaintiff's psychiatric symptoms more than minimally affect her ability to work. (AR 18-22 [explaining why Plaintiff's mental impairments are not severe].)

**B. Issue Two: The ALJ's Assessment of Dr. Wendel's Opinions.**

  **1. Summary of Dr. Wendel's Opinions and the ALJ's Reasons for Discounting Them.**

Plaintiff was examined by consultative psychologist Dr. Wendel on January 23, 2014. AR 613-16. Plaintiff told Dr. Wendel that "she hears voices which denigrate her," "she has suicidal ideation," she "is not comfortable around people," and she "does not feel comfortable going out." Id. Dr. Wendel noted Plaintiff's

claims of "hallucinations" and diagnosed her as suffering from "major depression with psychotic features." AR 615. This opinion contradicts Dr. Dell who found that Plaintiff did not suffer from major depression or auditory hallucinations and that her description of voices telling her that she does not deserve happiness "was not consistent with true psychotic symptoms …." AR 721, 726, 768.

Dr. Wendel opined that Plaintiff has moderate difficulties conducting activities of daily living and social interactions. AR 616. Dr. Wendel also found, "Based on her report, the Claimant cannot sustain focus and concentration over a normal work week." AR 615. These opinions contradict Dr. Dell who found that Plaintiff was either unimpaired or mildly impaired in all functional areas related to daily living, social interactions, and maintaining concentration. AR 771-72.

The ALJ gave "little weight" to Dr. Wendel's opinion for several reasons. AR 19. First, the ALJ found it inconsistent with Plaintiff's reported activities. Id. Second, the ALJ found that Dr. Wendel relied too heavily on Plaintiff's subjective complaints rather than her own observations and clinical findings, and that Plaintiff had provided inconsistent information. Id. Third, the ALJ found that Dr. Wendel's opinions were inconsistent with Plaintiff's longitudinal mental health records. AR 20. Fourth, the ALJ found Dr. Wendel's report internally inconsistent. Id.

## 2. The ALJ Gave Specific, Legitimate Reasons for Discounting Dr. Wendel's Opinions.

a. <u>Reason One</u>: Inconsistency with Plaintiff's Activities.

The ALJ characterized Plaintiff and her brother as reporting that Plaintiff "has very little limitation" in her activities of daily living. AR 19. Citing Function Reports completed by Plaintiff and her brother, the ALJ noted that Plaintiff can make meals (including oatmeal, eggs, sandwiches, spaghetti, and Mexican food), go for 20-minute walks, adhere to her medication schedule, do light household cleaning and laundry, go grocery shopping, drive, handle money, and pay bills. AR 21, citing AR 164-71 and AR 173-80. What limitations she reported were due to

physical pain, not mental impairments. Id. These reported activities are inconsistent with Dr. Wendel's finding that Plaintiff is "moderately" limited in conducting activities of daily living. AR 616.

The ALJ also cited Plaintiff's reported ability to go out alone, talk to her sisters on the phone, interact with her two adult children, visit her mother often, and attend church weekly. AR 21, citing AR 165, 168, 177. This level of social functioning is inconsistent with Dr. Wendel's finding that Plaintiff is "moderately" limited in this area. AR 616. Indeed, in her Function Report, Plaintiff did not check the box indicating that her injuries affect her ability to get along with others. AR 169. Thus, the ALJ's finding of inconsistency between Plaintiff's activities and Dr. Wendel's opinions are supported by substantial evidence.

         b.     Reason Two: Overreliance on Plaintiff's Complaints.

Dr. Wendel interviewed Plaintiff, performed a mental status examination, and administered some basic tests of concentration, reasoning, and memory. AR 614-15. From this, it appears Dr. Wendel relied heavily, but not exclusively, on Plaintiff's descriptions of her symptoms and resulting limitations.

Plaintiff argues that such reliance is inherent in psychiatric evaluations and therefore not a legitimate reason to discount Dr. Wendel's opinions. (JS at 19.) Here, however, Dr. Wendel's heavy reliance on Plaintiff's own reporting was coupled with evidence that Plaintiff had given Dr. Wendel inconsistent information and exaggerated her symptoms when describing them to Dr. Dell. The ALJ noted that Plaintiff told Dr. Wendel that she is "not comfortable around people," but also told Dr. Wendel that "she gets along with people." AR 19, citing AR 614.[1] Regarding exaggeration, Dr. Dell administered several standardized tests and

---

[1] The Court notes that Plaintiff apparently told Dr. Wendel in January 2014 "that she does not go shopping." AR 614. In her Function Report from May 2013, Plaintiff reported that she went grocery shopping twice a month. AR 167.

13

explained why he interpreted the discrepant results as revealing symptom exaggeration. AR 710, 725-26.

Standing alone, Dr. Wendel's reliance on Plaintiff's subjective complaints alone might not be a legitimate reason to discount Dr. Wendel's opinions in favor of Dr. Dell's. That reliance, however, coupled with the other evidence of record in this case (e.g., Dr. Dell spent more time examining Plaintiff, detected via testing a tendency to exaggerate, and provided opinions regarding Plaintiff's functionality that are more consistent with Plaintiff's reported activities), does provide a specific and legitimate reason for the ALJ to have given more weight to Dr. Dell's opinions than to Dr. Wendel's.

        c.        <u>Reason Three</u>: Inconsistency with Longitudinal Record.

ALJs should give more weight to medical opinions that are consistent with a claimant's overall health records. <u>Orn</u>, 495 F.3d at 631.

Here, Dr. Wendel opined that Plaintiff would experience "repeated episodes of emotional decompensation in work-like situations secondary to depression and pain …." AR 616. At the time of Dr. Wendel's examination, Social Security regulations defined "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." <u>Moreno v. Astrue</u>, 2009 U.S. Dist. LEXIS 61281, 2009 WL 2151855, at *14 n.2 (S.D. Cal. July 17, 2009) (quoting 20 C.F.R. § 404, subpt. P, app. 1). The ALJ identified this opinion as inconsistent with Plaintiff's longitudinal mental health record. AR 20.

Plaintiff has no documented episodes of decompensation. AR 22, 84. Between her 2011 onset date and her second appointment with Dr. Dell in February 2015, she did not receive any therapy or counselling. AR 761. Even without mental health treatment, she conducted activities of daily living more complicated than "simple" work (such as driving and grocery shopping), with her limitations

largely attributed to physical pain rather than mental impairments. AR 21 (citing AR 164-72, 241-57). Thus, the ALJ's third specific and legitimate reason is supported by substantial evidence.

          d.     <u>Reason Four</u>: Internal Inconsistency.

The ALJ asserted that Dr. Wendel's opinion that Plaintiff has "marked" difficulties with memory and concentration (AR 616) "is not consistent with her half-page summary of test findings, which include the fact that during the memory test, the claimant was able to register 3/3 words immediately." AR 20. In fact, Dr. Wendel stated the results of the memory test as follows: "Registers 3/3 words immediately, but recalls just 1/3 after several minutes." AR 615. Dr. Wendel also said Plaintiff "struggles with simple abstract verbal reasoning questions" and concluded, "Concentration and/or ability to perform cognitive tasks was observed to be poor today." Id.

As another purported internal inconsistency, the ALJ contrasted Dr. Wendel's finding that Plaintiff could not sustain focus and concentration over a normal work week with her finding that "claimant had adequate concentration." AR 22. Dr. Wendel characterized Plaintiff's memory as "adequate for interview purposes." AR 615. The fact that Plaintiff could adequately recount to Dr. Wendel her familial, educational, and occupational history (AR 613) is not necessarily inconsistent with Dr. Wendel's finding that Plaintiff's psychological symptoms would preclude her from sustaining concentration over a normal work week.

The ALJ's fourth reason is not supported by substantial evidence, but any error is harmless, because the ALJ gave three other legally sufficient reasons.

**C. Issue Three: The ALJ's Assessment of Dr. Solomon's Opinions.**

    **1. Summary of Dr. Solomon's Opinions.**

Two agency doctors – Drs. Balson and Solomon – reviewed Plaintiff's records and provided opinions concerning the degree to which her depression and anxiety limited her functional abilities. In May 2013, Dr. Balson opined that

15

1  Plaintiff had no psychologically-based restrictions on activities of daily living or
2  social functioning, and only mild difficulties maintaining concentration, persistence
3  or pace. AR 70.
4      Dr. Solomon was subsequently asked if she would adopt Dr. Balson's
5  assessment and was given information from Dr. Wendel's report, including "MSS
6  [medical source statement]: unable to sustain focus and concentration over a normal
7  work week." AR 83. In February 2014, Dr. Solomon opined that "MER [medical
8  evidence of record] does not support the severity" of Dr. Wendel's medical source
9  statement. AR 84. Dr. Solomon found that Plaintiff's affective disorder caused
10 "mild" difficulties with activities of daily living and social functioning, and
11 "moderate" difficulties maintaining concentration, persistence or pace. Id. She
12 concluded that Plaintiff "should be capable of simple work adaptation on psych
13 basis." Id.

**2. Analysis.**

The ALJ rejected Dr. Solomon's opinions, including the limitation to simple work, because "a preponderance of the evidence shows that the claimant has only mild [mental] limitation," and because Dr. Solomon relied too heavily on the discredited opinions of Dr. Wendel concerning Plaintiff's difficulties maintaining concentration, persistence or pace. AR 22.

The ALJ correctly concluded that most of the other evidence concerning Plaintiff's mental impairments – e.g., Dr. Balson's initial evaluation, Dr. Dell's two lengthy reports, and Plaintiff's self-reported ability to drive, shop, handle money, visit family, attend church, and maintain a schedule of exercise and chores – showed that Plaintiff's mental impairments did not limit her functional abilities more than mildly. Indeed, the fact that Dr. Solomon's opinions were inconsistent with those of examining physician Dr. Dell would have been sufficient reason to discount Dr. Solomon's opinions. See Lester, 81 F.3d at 830 (noting that examining physician opinion is generally entitled to more weight than that of non-

examining physician). Regardless of the degree to which Dr. Solomon relied on Dr. Wendel, the ALJ gave specific, legitimate reasons supported by substantial evidence for rejecting Dr. Solomon's opinions, including the limitation to simple work.

Plaintiff argues that Dr. Solomon opined Plaintiff should be limited to simple work "based on his own opinion that the claimant had mild limitations." (JS at 21.) In fact, Dr. Solomon opined that Plaintiff had "moderate" difficulties maintaining concentration, persistence or pace. AR 84. Contrary to Plaintiff's argument, Dr. Solomon's simple work restriction was not to accommodate merely "mild" limitations.

**D. Issue No. 4: The ALJ's Mental Limitations Findings.**

Plaintiff argues that the ALJ's "ruling that plaintiff did not have mental limitations is [not] supported by substantial evidence." (JS at 22.) Plaintiff characterizes the ALJ's opinion as ruling that Plaintiff's "mental impairment was not severe and that she had no resulting mental limitations." Id.

Plaintiff mischaracterizes the ALJ's opinion. The ALJ did find that Plaintiff's mental impairment was not severe but also found that it caused "mild" limitations in the functional area of concentration, persistence, and pace. AR 21-22. This finding of mild limitations is supported by the medical opinions of Drs. Balson and Dell, as discussed above. Thus, Plaintiff's Issue Four fails to show legal error.

**E. Issue No. 5: The ALJ's Credibility Determination.**

**1. Rules for Evaluating the Claimant's Subjective Symptom Testimony.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v.

17

Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting

pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.[2]

### 2. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony.

The ALJ found Plaintiff's subjective symptom testimony regarding her mental impairments "not entirely credible" because it was "inconsistent with her activities of daily living" and "weakened by the claimant's inconsistent statements." AR 24, 28.

Plaintiff argues that her activities are not inconsistent with depression and anxiety so extreme that she can only work with unlimited discretionary 20-minute breaks (a condition that renders her unemployable). (JS at 25.) As explained above, no medical source so opined. Dr. Dell imposed as a work restriction that Plaintiff be allowed to take a 20-minute break "whenever she experiences increased symptoms of depression or anxiety," which Dr. Dell and the ALJ apparently concluded would not be work preclusive. In any event, taken together, activities that include driving, shopping, eating out, going to church, preparing meals, performing household chores independently, handling money, and adhering to a medication schedule are inconsistent with Plaintiff's claim of disability arising from

---

[2] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 28, 2016, and therefore is not applicable to the ALJ's January 2016 decision in this case. Id.

mental impairment. See Orn, 495 F.3d at 639 (noting that daily activities may be grounds for adverse credibility finding if claimant is able to spend substantial part of day engaged in pursuits involving physical functions that are transferable to work setting).

As examples of Plaintiff's inconsistent statements, the ALJ pointed out that in her Function Report, Plaintiff stated that she talks to her sisters on the phone and/or visits her mom "every day" (AR 168), but Plaintiff told Dr. Dell that "she isolates herself from friends and family," causing Dr. Dell to note, "she later made statements that contradict this." AR 28, citing AR 168, 758. Dr. Dell noted that Plaintiff visits her mother two or three days per week and they "often go out to eat together." AR 761; compare AR 614 (Plaintiff told Dr. Wendel "she does not feel comfortable going out"). Based on test results, Dr. Dell concluded that Plaintiff was exaggerating her symptoms. AR 710, 725-26. Plaintiff's inconsistent statements concerning the limiting effects of her psychiatric symptoms provide a second, legally sufficient reason supporting the ALJ's adverse credibility determination.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: February 08, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge